HENRY C. BLISS, assignee, *vs.* CHARLES E. CROSIER & another.

Hampden.    September 26, 1893. — October 18, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Insolvent Debtor — Mortgage of Personal Property — After-acquired Property.*

In an action by the assignee in insolvency of the estate of A., for the conversion of certain personal property described in a mortgage given by A. to the defendant, it appeared that A. bought of the defendant the stock of goods and fixtures

in a certain store, together with a horse and wagon, for a certain sum; that A. paid no money to the defendant, but gave him a mortgage covering the property so bought, future purchases of goods to be placed in the store, and certain other personal property (which he had previously mortgaged to other persons), to secure the payment of the purchase money in weekly instalments; that the bill of sale and mortgage bore the same date, and, at the same time, as additional security, A. executed an assignment to the defendant of all accounts then due him in a former business, and of all accounts which might thereafter become due in the new business; that, after the payment of six weekly instalments, A. made default and ran away; that the defendant duly served and recorded notice of his intention to foreclose his mortgage, and then took possession of the property described therein, except such portion thereof as was claimed by the holders of the prior mortgages; that the defendant had no knowledge of those mortgages; and that A. was declared insolvent two months after the date of the mortgage to the defendant. The judge declined to rule, as requested by the plaintiff, that " the mortgage and assignment were not in the usual and ordinary course of the business of the debtor, and they put the burden on the defendant to show that A. was not insolvent or in contemplation of insolvency at the time, and that the defendant had not grounds of belief of such insolvency." *Held,* that the plaintiff had no ground of exception.

The possession of after-acquired personal property, rightfully taken and maintained by a mortgagee under a mortgage purporting to cover it, gives him a title good not only against the mortgagor, but against his assignee in insolvency.

TORT, by the assignee in insolvency of the estate of Isaac N. Faulkner, for the conversion of certain personal property described in a mortgage given by Faulkner to the defendants. Trial in the Superior Court, without a jury, before *Maynard,* J., who reported the case for the determination of this court, in substance as follows.

It appeared in evidence that Faulkner, between October 20, 1891, and May 19, 1892, executed four chattel mortgages covering substantially all his property, including his household effects. On May 19, 1892, Faulkner purchased of the defendants, and took a bill of sale therefor, " the entire stock of goods and fixtures in the store on the corner of School and Summit Streets, in West Springfield, and lot of ice," according to an inventory to be annexed to the bill of sale, and also " one bay horse six years old, and one express wagon." The bill of sale also contained a lease of the premises from the defendants to Faulkner for one year, at a rental of $25 per month. Faulkner paid no money to the defendants, but gave them a chattel mortgage to secure the payment of the purchase money ($1,363.63), " in weekly instalments of twenty-five dollars each, beginning May 23, 1892, without interest, provided instalments are paid at

maturity of each instalment," covering all the property described in the bill of sale, and substantially all the property described in the other four mortgages, except his household effects. It also contained this clause: "This mortgage is also to cover goods, wares, and merchandise which I may hereafter purchase and place in said store during the continuance of this mortgage. Permission is given to sell said stock of goods in the ordinary course of retail trade, provided the stock is kept fairly up to present inventory." This mortgage and the bill of sale were executed at the same time, and bore the same date, May 19, 1892, and the mortgage was duly recorded. At the same time, as additional security for the payment of the purchase money, and as a part of the same transaction, Faulkner executed an assignment as follows: "In consideration of one dollar and other valuable consideration to me paid by Crosier Brothers, of West Springfield, Mass., I hereby transfer and assign to said Crosier Brothers all my right, title, and interest in and to all accounts due me and pertaining to the meat business lately carried on by me, and also to any and all accounts which may hereafter become due me in my meat and grocery business as now carried on by me, with full power and authority to collect the same in my name, by suit or otherwise, until my indebtedness to said Crosier Brothers is fully paid."

After the payment of six weekly instalments ($150), Faulkner made default and ran away. On July 8, 1892, the defendants duly served a notice of their intention to foreclose their mortgage, under the provisions of the Pub. Sts. c. 192, §§ 7, 9, and the notice was recorded in the town clerk's office of West Springfield on July 9, 1892. The defendants then took possession of the property described in their mortgage, (except such part of it as was claimed by the owners of the four prior mortgages,) and also of the books of account used by Faulkner in his business.

On July 29, 1892, Faulkner was declared insolvent, and the plaintiff was duly appointed assignee of his estate.

It was agreed that, after the date of the defendants' mortgage, and before the notice of foreclosure, Faulkner purchased and added to his stock goods to the value of $75.

The defendants testified that they did not examine the town clerk's record of mortgages as to Faulkner's property, either

before or at the time of the sale to him by them, and they had no knowledge of any outstanding mortgages upon his property; and that at the time of the transaction he told them there were no mortgages on his property.

Evidence was introduced upon which the judge found as facts, that Faulkner was insolvent on May 19, 1892, being the day when the sale took place; that the mortgage and assignment were given by the mortgagor in the usual and ordinary course of his business; that he had, at the time of giving the same, no intention of going into insolvency, or any purpose of violating any of the provisions of law relating to insolvency in giving the mortgage and assignment, but expected to continue in the prosecution of his business; that he gave the same for a present valuable consideration; and that the defendants, when they received the same, did not know or have reason to believe that the mortgagor was insolvent or in contemplation of insolvency, or that the same was made in violation of the insolvency laws.

The plaintiff requested the judge to rule, among other things, as follows : " 1. The mortgage and assignment were not in the usual and ordinary course of the business of the debtor, and they put the burden upon the defendants to show that Faulkner was not insolvent or in contemplation of insolvency at the time, and that the defendants had not grounds of belief of such insolvency.  2. If it appear that Faulkner was insolvent at the time the defendants took possession, and that the defendants then had reasonable grounds to believe him insolvent, the property acquired subsequent to the date of the mortgage can only be held by the defendants as a pledge could be held, if taken at the time in security for the debt, and the defendants were subject to any disability arising from the insolvency of Faulkner at the time of the taking possession."

The judge declined to rule as requested; and found for the defendants.

*H. C. Bliss*, pro se.

*T. M. Brown*, (*J. G. Dunning* with him,) for the defendants.

ALLEN, J.  1. The plaintiff's first request for a ruling rested upon the provision in Pub. Sts. c. 157, § 98, that " if such sale, assignment, transfer, or conveyance is not made in the usual and ordinary course of business of the debtor, that fact shall be *prima*

*facie* evidence of such cause of belief." In order to avail himself of this provision, it was incumbent on the plaintiff to make it appear that the transaction was not according to the usual and ordinary course of business of the particular person whose conveyance was the subject of investigation, that is, of Faulkner; not that such transactions were unusual in the general conduct of business throughout the community. *Nary* v. *Merrill*, 8 Allen, 451. This obviously presented a question of fact. There may be cases where a court can say that upon all the evidence no other conclusion is warranted except that the sale or conveyance was manifestly out of the debtor's usual course of business. See *Nary* v. *Merrill*, *supra; Walbrun* v. *Babbitt*, 16 Wall, 577; *Buffum* v. *Jones*, 144 Mass. 29. In the present case, upon the facts disclosed, it was not the duty of the judge to rule, as matter of law, that the mortgage and assignment were outside of the usual and ordinary course of Faulkner's business. Not enough facts are reported to take the case out of the general rule, which is that the question should be treated as a question of fact, and determined accordingly. *Leighton* v. *Morrill*, *ante*, 271. *Killam* v. *Peirce*, 153 Mass. 502. *Bridges* v. *Miles*, 152 Mass. 249. *Stevens* v. *Pierce*, 147 Mass. 510, 514. *Buffum* v. *Jones*, 144 Mass. 29. *Alden* v. *Marsh*, 97 Mass. 160. The report of the facts in evidence is rather meagre. It is not even stated what Faulkner's previous business had been, unless the same may be inferred from the recital in the assignment, nor have we before us copies of his prior chattel mortgages. It is obvious that the report does not contain all of the evidence which was introduced at the trial, and upon which the findings of facts by the presiding justice were based. The argument of the plaintiff rests chiefly upon the inferences which he contends should be drawn from the fact of Faulkner's insolvency, and the character of the papers which he executed. But these are not sufficient to require the giving of the ruling requested, especially as we do not know what other evidence was in the case.

2. The plaintiff's second request also was properly refused. *Bennett* v. *Bailey*, 150 Mass. 257. *Blanchard* v. *Cooke*, 144 Mass. 207, 222–226. *Chase* v. *Denny*, 130 Mass. 566.

*Judgment for the defendants on the finding.*