908 P.2d 1244

Roger D. SMITH, Claimant–Respondent,

v.

**J.B. PARSON COMPANY, Employer, and Saint Paul Fire & Marine Insurance Company, Surety, Defendants–Appellants,**

and

**Department of Health & Welfare, Employer, and State Insurance Fund, Surety, and State of Idaho, Industrial Special Indemnity Fund, Defendants–Respondents.**

No. 21341.

Supreme Court of Idaho,
Boise, September 1995 Term.

Jan. 5, 1996.

Bowen, Brassey, Gardner, Wetherell & Crawford, Boise, for appellants. Debra D. Irish argued.

Elam & Burke, P.A., Boise, for respondents Dept. of Health & Welfare and State Ins. Fund. Jeffery J. Ventrella argued.

Mallea & Scrivner, Boise, for respondent Indus. Special Indem. Fund. Kenneth L. Mallea argued.

Carty & Dredge, Boise, for respondent Smith. Richard K. Dredge argued.

McDEVITT, Chief Justice.

Claimant, Roger D. Smith (Smith), was involved in two separate industrial injuries for which he seeks worker's compensation benefits. This case involves a consolidation of Smith's two claims against his employers, combined with a claim against the State of Idaho Industrial Special Indemnity Fund (I.S.I.F.). J.B. Parson Company and its surety, St. Paul Fire & Marine Insurance Company (collectively referred to as Parson) appeal from the Industrial Commission's (Commission) award of worker's compensation benefits to Smith and apportionment of the liability for Smith's injuries between Smith's last employer, Department of Health and Welfare Idaho State School and Hospital, and the hospital's surety, the Idaho State Insurance Fund (collectively referred to as I.S.S.H.), Parson, and the I.S.I.F. The primary issue in this case is whether the Commission's apportionment of benefits was proper. We conclude that the Commission erred in its apportionment of liability between the two employers and the I.S.I.F. We reverse the decision of the Commission and remand the matter to the Commission for further proceedings consistent with this opinion.

I.

## BACKGROUND AND FACTS

Smith is a fifty-six year old man with an eighth grade formal education and a G.E.D. certificate. From October 1985 through February 1986 and from October 1987 through January 22, 1988, Smith was a seasonal employee for Parson. Smith drove a truck and hauled sugar beets for the company. On January 22, 1988, Smith's right index finger was partially amputated in an industri-

al accident at Parson. Smith was unloading his truck, when a pulling-latch cable malfunctioned and caught his hand, removing his first index finger at the first joint. On the day of the accident, Smith reported the accident to Parson and filed a notice of injury and claim for benefits with the Industrial Commission. Smith received payment of total temporary benefits, permanent partial benefits, and medical expenses for the partial amputation of his right index finger.

From the partial amputation injury, Smith received an impairment rating from Dr. Ercil R. Bowman of 60%, as compared with the amputation of the finger, which constituted a 15% impairment of the whole hand or an 8% impairment of the whole person. Smith continued to suffer physical problems with his finger, and on January 16, 1992, Smith's right index finger was totally amputated. On June 15, 1992, Dr. Troy B. Watkins gave Smith an impairment rating, pursuant to the American Medical Association Guides to Permanent Partial Impairment, of 20% impairment of the hand based on a 100% loss of his index finger.

Smith's second industrial accident occurred on or about January 16, 1990. At that time, Smith was employed at the I.S.S.H, where he was responsible for general housekeeping duties. On or about January 16, 1990, Smith was cleaning underneath furniture at the I.S.S.H., when he suffered an injury to his left hip and lower back. Smith received temporary disability benefits for his back injury. Smith eventually required surgery on his back and the fusion of his spine. On June 3, 1991, Dr. Sid Garber found Smith's back to be medically stable and gave Smith's back injury a 20% impairment rating of the whole person.

In addition to the two injuries from the above described industrial accidents, Smith also suffered from two non-work-related conditions. In 1959, Smith was involved in an automobile accident in which Smith sustained a blunt trauma and injury to his left eye. Smith's eye injury significantly impaired his vision. On February 18, 1993, Dr. Mark D. Borup, who examined Smith's eye, concluded that Smith's eye condition was stable and on March 11, 1993, gave him an impairment rating of 19% of the whole person.

Smith's second non-work-related condition is a rare blood disorder called polycythemia vera. Smith was diagnosed with this condition in August 1989. The polycythemia vera is a blood disorder that can produce profound lethargy and require frequent removal of blood to keep blood counts stable. Smith's blood disorder required the postponement of Smith's back surgery and also required that Smith's spleen be removed on October 23, 1990. No physician rated the extent of Smith's permanent impairment due to the polycythemia vera.

On September 11, 1990, Smith filed an application for a worker's compensation hearing, seeking permanent partial impairment benefits, total temporary disability benefits, and permanent partial disability benefits for his lower back injury. Smith also complained that his surety had ceased paying total temporary disability benefits due to complications in his recovery from the polycythemia vera. On September 16, 1992, after Smith's finger amputation and after the finger injury had reached medical stability, Smith filed an amended complaint seeking disability benefits for the injury he suffered to his finger on January 22, 1988. On November 11, 1992, Smith filed a complaint against the I.S.I.F., reporting both the finger amputation injury and the lower back injury. Smith claimed that the finger amputation injury, the back injury, and the blood disorder, when combined with his age, education, work experience, and other factors, rendered him totally and permanently disabled.

The Commission consolidated the three claims; the finger amputation injury claim, the back injury claim, and the complaint against the I.S.I.F. No objection was made to the consolidation of Smith's claims. A hearing before the referee of the Industrial Commission was held on July 20, 1993. The only issues presented at the hearing were: (1) the extent of Smith's permanent disabili-

ty, including whether Smith was totally and permanently disabled under the odd-lot doctrine; and (2) the proper apportionment of liability.

The referee concluded that Smith sustained personal injuries caused by accidents arising out of and in the course of his employment with Parson on January 22, 1988, and with the I.S.S.H. on January 17, 1990, for which Smith was entitled to workers' compensation benefits. The referee found that Smith suffered permanent impairments totaling 56% of the whole person. The Commission reached the determination that Smith's permanent impairments totalled 56% as follows: The referee determined that Smith suffered a 19% impairment of the whole person due to Smith's left eye injury and a 14% impairment of the whole person for Smith's loss of his right index finger. The 14% impairment rating for the finger injury was based on the worker's compensation schedule of permanent impairment at section 72–428 of the Idaho Code. The referee also found that Smith suffered a 20% impairment of the whole person due to Smith's back injury—one-half of which was attributed to Smith's pre-existing spinal stenosis, and the other one-half was attributed to Smith's 1990 industrial injury. Since no impairment rating of Smith's blood condition was made by any of Smith's physicians, the referee determined that, based on Smith's testimony and physicians' reports, Smith's polycythemia vera was a functional abnormality, which constituted a permanent physical impairment under Idaho Code § 72–422. Based on the Commission's authorized role as the "ultimate evaluator of impairment," *Urry v. Walker & Fox Masonry Contractors,* 115 Idaho 750, 755, 769 P.2d 1122, 1127 (1989), the referee found that Smith suffered from a 3% impairment of the whole person for fatigue and pain resulting from Smith's polycythemia vera condition.

The referee considered all four of Smith's impairments, combined with Smith's age and education, and determined that Smith was totally and permanently disabled as of June 15, 1992, the date of medical stability. The referee relied upon Smith's testimony and Smith's employment applications and determined that Smith met his burden of establishing a *prima facie* case of odd-lot disability. The referee then found that each of Smith's impairments—the vision impairment, the blood condition, the amputated dominant index finger, and the back condition—hindered Smith's employability, with the exception of the 10% impairment for Smith's spinal stenosis. The referee found that Smith's spinal stenosis did not hinder Smith's ability to obtain employment. The referee was unpersuaded by the defendants' attempt to rebut Smith's *prima facie* case and concluded that Smith was an odd-lot worker who was totally and permanently disabled.

On the issue of apportionment of liability, the referee concluded that the I.S.I.F. shared liability with Parson and the I.S.S.H. Smith's vision impairment and polycythemia vera condition were each found to have been a manifest pre-existing permanent physical impairment, which constituted a subjective hindrance to Smith's obtaining employment, and which, when combined with Smith's lower back injury and his other pre-existing and industrial injuries, rendered Smith totally and permanently disabled. The referee found that Smith's spinal stenosis was not a pre-existing impairment that constituted a subjective hindrance to Smith's obtaining employment. With respect to Smith's finger amputation injury, the referee concluded that although the injury existed and manifested itself prior to Smith's 1990 industrial injury, Smith's impairment from the loss of his right index finger did not constitute a pre-existing impairment for which I.S.I.F. would be responsible. This conclusion was based on the fact that Smith's claim for benefits for his right hand impairment was an open, unresolved, and viable claim at the time of Smith's 1990 back injury, such that it did not constitute a pre-existing injury under the worker's compensation statutes. The referee found Parson to be liable for the permanent disability in excess of impairment caused by the industrial accident, which Smith suffered while in Parson's employ.

In apportioning Smith's disability, the referee prorated the non-medical portion of the disability between Parson, the I.S.S.H., and the I.S.I.F., in proportion to their respective percentages of responsibility for the physical impairment. The referee concluded that the defendants were responsible for 46% of Smith's disability as follows: The I.S.I.F. was held responsible for the 19% pre-existing left eye impairment and the 3% pre-existing polycythemia vera impairment; Parson was held responsible for the 14% impairment caused by Smith's January 22, 1988 industrial accident; and the I.S.S.H. was held responsible for the 10% impairment caused by Smith's January 16, 1990 industrial accident, not including the 10% impairment for Smith's spinal stenosis condition. The remaining disability, 54%, was then apportioned between the defendants in the same percentages as their respective liability. The referee determined total liability as follows: the I.S.I.F. was responsible for 47.83% (19% + 3% plus 22/46ths × the balance of Smith's disability); Parson was responsible for 30.43% (14% + 10/46ths × the balance of Smith's disability); the I.S.S.H. was responsible for 21.74 (10% + 10/46ths × the balance of Smith's disability). The referee provided credit for any amounts previously paid or advanced to Smith due to his permanent impairment or disability.

The Commission approved and adopted the findings of fact, conclusions of law, and proposed order of the referee and issued its order on April 26, 1994. Parson appealed the decision of the Commission to this Court.

## II.

### THE COMMISSION'S FINDINGS OF FACT ARE SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE IN THE RECORD

 Parson challenges a number of the Commission's findings of fact. In reviewing an appeal from the Industrial Commission, this Court will uphold the findings of the Commission if they are supported by substantial and competent evidence in the record. I.C. § 72–732; *Lethrud v. State,* 126 Idaho 560, 563, 887 P.2d 1067, 1070 (1995). Evidence is "substantial and competent" if a reasonable mind might accept such evidence as adequate and sufficient to support a conclusion. *Reiher v. American Fine Foods,* 126 Idaho 58, 60, 878 P.2d 757, 759 (1994). In reviewing a decision from the Commission, all facts and inferences are viewed in the light most favorable to the party who prevailed before the Commission. *Dumaw v. J.L. Norton Logging,* 118 Idaho 150, 155, 795 P.2d 312, 317 (1990). The Commission's conclusions of law are freely reviewed by the Court. Idaho Const. art. V, § 9; *Davaz v. Priest River Glass Co.,* 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994).

 Parson challenges the Commission's finding of a 3% impairment rating for Smith's blood condition on the grounds that the Commission failed to make a specific finding that the impairment rating for Smith's blood condition was made as of the date of Smith's back injury. Parson relies upon *Colpaert v. Larson's Inc.,* 115 Idaho 825, 771 P.2d 46 (1989), to assert that the Commission was required to assign an impairment rating for a progressive disease or injury (the polycythemia vera) as of the date of the last injury, and that it erred in failing to do so.

*Colpaert* does not support Parson's argument. In *Colpaert,* the claimant was injured in an industrial accident on December 10, 1982 and suffered from a pre-existing condition that was progressive in nature. *Id.* at 826–27, 771 P.2d at 47–48. The Commission found the claimant to be totally and permanently disabled. *Id.* at 827, 771 P.2d at 48. On appeal, the employer and the I.S.I.F. challenged the Commission's finding of total and permanent disability on the ground that the Commission did not consider the date of claimant's medical stability. *Id.* at 828, 771 P.2d at 49. The Court upheld the Commission's reliance on an impairment rating of January 2, 1985, rather than the earlier ratings of May 19 and June 13, 1983, since

claimant's shoulder had not become medically stable as of the first impairment ratings. *Id.* By this holding, the Court reaffirmed the requirement that an injury is to be rated upon the date of medical stability. The Court then went on to hold that with respect to progressive diseases or conditions, a permanent physical impairment rating can still be assessed, if the rating is made at a specific point in time. *Id.* at 829, 771 P.2d at 50.

In the present case, the Commission's lack of a specific finding as to the date it assigned an impairment rating on Smith's blood condition is not fatal to its determination. As the fact finder and the evaluator of impairment, the Commission made its own determination of the impairment rating of Smith's blood disease. *Urry v. Walker & Fox Masonry Contractors,* 115 Idaho 750, 755, 769 P.2d 1122, 1127 (1989). The Commission's impairment rating of Smith's blood condition was based upon the testimony of Smith and the reports of Smith's physicians. We conclude that the Commission's rating is supported by substantial and competent evidence in the record.

■ Parson next argues that the Commission made inconsistent findings on the issue of whether Smith's index finger injury was a pre-existing injury that constituted a hindrance or obstacle to Smith's ability to obtain employment. More specifically, Parson asserts that the Commission's determination that Smith's finger injury constituted a hindrance to Smith's obtaining employment required a conclusion that the finger injury constituted a pre-existing injury for which the I.S.I.F. bears liability. We disagree.

In a total and permanent, odd-lot disability case, involving the I.S.I.F., several portions of the analysis include a determination of whether an impairment or disability hinders the claimant's employability. The first finding challenged by Parson—that Smith's dexterity, strength, and endurance was diminished by the finger injury—was part of the Commission's analysis to determine whether Smith was totally and permanently disabled. The Commission assessed Smith's ability to engage in gainful activity pursuant to Idaho Code §§ 72–425 and 72–430, and considered whether Smith's impairments reduced the likelihood that Smith could find suitable employment. The Commission then determined that Smith was totally and permanently disabled and that he fell within the odd-lot doctrine, based on Smith's abilities, including the extent to which Smith's finger injury impaired his employability.

The Commission's later finding that Smith's injury was not a pre-existing injury is not inconsistent with the above findings. This latter finding was made for the purpose of determining the liability of the I.S.I.F. for pre-existing impairments under the worker's compensation apportionment scheme at I.C. § 72–332. The Commission found that the finger injury existed prior to the 1990 back injury, but it determined that the injury was not "pre-existing" *for purposes of I.S.I.F. liability,* since the claim was a separate, viable, and open claim at the time of the 1990 back injury. The Commission's conclusion is supported by the fact that Smith's disability and Parson's liability due to the finger injury had never been determined prior to Smith's 1990 back injury. Smith's subsequent back injury, which occurred prior to the final determination of Smith's disability due to the 1988 finger injury, does not dismiss Parson from liability for Smith's total and permanent disability caused by the 1988 industrial accident.

■ Parson makes an additional request that this Court make an advisory ruling on the issue of whether the schedule of benefits at Idaho Code § 72–428 controls over impairment ratings assessed by treating physicians for the same injury. Parson admits that this issue was neither argued nor contested below. The Court does not address issues that are raised for the first time on appeal. *Schiewe v. Farwell,* 125 Idaho 46, 49, 867 P.2d 920, 923 (1993).

### III.

### THE COMMISSION ERRED IN APPORTIONING LIABILITY BETWEEN PARSON, THE I.S.S.H., AND THE I.S.I.F. PURSUANT TO IDAHO CODE § 72–332 AND THE *CAREY* FORMULA

■ Parson argues that liability cannot be apportioned to Parson on the grounds that

Smith's finger amputation injury is a pre-existing injury and that liability may not be apportioned between pre-existing injuries. Contrary to Parson's argument, Smith's finger amputation injury is not a pre-existing injury for purposes of apportioning liability under Idaho Code § 72–332.

Idaho Code § 72–332, allows for the apportionment of a pre-existing "permanent physical impairment" if the *prima facie* elements of subsection (1) are met and if the impairment is a permanent condition that constitutes a subjective hindrance or obstacle to obtaining employment for the particular claimant pursuant to subsection (2). *Dumaw v. J.L. Norton Logging*, 118 Idaho 150, 155–56, 795 P.2d 312, 317–18 (1990). Section 72–332 also incorporates into the term "permanent physical impairment," the definition of Idaho Code § 72–422, which defines a permanent impairment as any functional abnormality or loss that has reached maximal medical rehabilitation or a state of medical stability. I.C. § 72–422; *see Nelson v. David L. Hill Logging*, 124 Idaho 855, 857, 865 P.2d 946, 948 (1993) ("[Section 72–422 of the Idaho Code] contemplates that a claimant's condition must be stabilized before evaluation of permanent impairment.")

Smith's finger amputation injury did not reach medical stability until June 15, 1992. Thus, an impairment rating of the finger injury could not have been made prior to this time. The Commission determined that, although Smith's finger amputation injury predated the 1990 back injury, it did not constitute a pre-existing injury *for the purpose of apportioning liability to the I.S.I.F.* We conclude that the ·Commission properly determined that Smith's claim against Parson was open and as of yet unresolved. Smith's finger injury was properly treated as an unresolved claim for worker's compensation benefits and not as a pre-existing permanent physical impairment under Idaho Code § 72–332. Because we conclude that Smith's finger injury is not a pre-existing impairment pursuant to Idaho Code § 72–332, we need not address Parson's challenge to the finger injury impairment rating based upon what

the rating should have been if the injury were pre-existing in nature.

▮▮▮ Parson also challenges the Commission's apportionment of liability to Parson and asserts that the Commission used an improper application of Idaho Code § 72–332 and of the apportionment formula adopted in *Carey v. Clearwater County Rd. Dept.*, 107 Idaho 109, 686 P.2d 54 (1984). While the Commission's apportionment of disability is a question of fact, which will not be overturned if it is supported by substantial and competent, although conflicting evidence, *Reiher v. American Fine Foods*, 126 Idaho 58, 62, 878 P.2d 757, 761 (1994), a challenge to the Commission's application of a statute is a question of law over which this Court exercises free review. Idaho Const. art. V, § 9; *Davaz v. Priest River Glass Co.*, 125 Idaho 333, 336, 870 P.2d 1292, 1295 (1994).

▮▮▮ Idaho Code § 72–332 sets forth Idaho's scheme for apportioning liability for total and permanent disability resulting from an industrial injury and pre-existing impairments. Prior to its amendment in 1991, Idaho Code § 72–332 provided:

**Payment for second injuries from industrial special indemnity account.—**

(1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the industrial special indemnity account.

(2) "Permanent physical impairment" is as defined in section 72–422, Idaho Code, provided, however, as used in this section such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining re-employment if the claimant should become employed. This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-existing permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment.

I.C. § 72–332.[1] Under this provision, where an employee with a permanent physical impairment, is rendered totally and permanently disabled under the odd-lot doctrine due to a subsequent work-related injury, the benefits are apportioned between the employer as of the time of the last injury, and the I.S.I.F. The apportionment formula, referred to as the *Carey* formula, pro-rates the non-medical portion of disability between the employer and the I.S.I.F. in proportion to the employer's and the I.S.I.F.'s respective percentages of responsibility for the impairment. *Carey,* 107 Idaho at 118, 686 P.2d at 63. Under the *Carey* formula, an employer is liable for the portion of the employee's disability caused by the last industrial injury, and the I.S.I.F. is liable for the disability caused by a pre-existing condition of the employee. *Dohl v. PSF Industries, Inc.,* 127 Idaho 232, 237, 899 P.2d 445, 450 (1995): *Horton v. Garrett Freightlines, Inc.,* 115 Idaho 912, 916–17, 772 P.2d 119, 123–24 (1989).

The consolidation of Smith's claims presented the Commission with two independent work-related injuries caused by two separate accidents at different places of employment and two non-work-related conditions for which Smith seeks worker's compensation benefits. The Commission considered the combination of all of Smith's impairments and their total effect on Smith. The Commission found that Smith suffered a 19% impairment of the whole person due to Smith's left eye injury, a 14% impairment of the whole person for Smith's loss of his right index finger, a 20% impairment of the whole person due to Smith's back injury—one half of which was determined to be attributable to Smith's pre-existing spinal stenosis, and the other one half attributable to Smith's 1990 industrial injury, and a 3% impairment of the whole person for fatigue and pain resulting from Smith's polycythemia vera condition. The Commission concluded that Smith suffered permanent impairments totaling 56% of the whole person, which combined with Smith's age and education, to render Smith totally and permanently disabled under the odd-lot doctrine. Because, as concluded above, Smith's finger injury was not a pre-existing permanent physical impairment for purposes of apportioning liability to the I.S.I.F. pursuant to I.C. § 72–332, it was error for the Commission to include the finger injury in the *Carey* apportionment formula. We reverse the decision of the Commission and direct the Commission on remand to determine the disability attributable to Smith's finger injury without applying the *Carey* formula to that injury. This determination will result in the amount of Parson's liability for the injury suffered by Smith while employed at Parson's. The Commission is then to apply the *Carey* formula, not including the extent of Smith's finger disability, since the finger injury was not "pre-existing" under Idaho Code § 72–332.

## IV.

### THE I.S.S.H. IS DENIED ATTORNEY FEES ON APPEAL

█ The I.S.S.H. requests attorney fees on appeal pursuant to Idaho Appellate Rule

---

**1.** Section 72–332 of the Idaho Code was amended in 1991 to change the second reference to "compensation benefits" in subsection (1), to "income benefits." 1991 Idaho Sess.Laws, H.B. No. 108, Ch. 155, § 1, pp. 371–72. The 1991 amendment is not applicable here, since Smith's injuries occurred in 1988 and 1990.

41. The I.S.S.H. raises this issue on appeal, but does not make any arguments or provide any support for its assertion. We will not consider on appeal issues which are completely unsupported by argument or authority. *Langley v. State,* 126 Idaho 781, 784, 890 P.2d 732, 735 (1995).

V.

## CONCLUSION

In conclusion, we reverse the decision of the Commission and remand this case for further proceedings consistent with this opinion. No attorney fees or costs are awarded on appeal.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.