# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38158

| | |
|---|---|
| INSIGHT LLC, an Idaho limited liability company; DONALD F. HUTTON, an unmarried man; HLT REAL ESTATE LLC, an Idaho limited liability company; THE EARLE-HENRION TRUST dated January 27, 1998, the sole and separate property of DANIEL C. EARLE; and INDEPENDENT MORTGAGE LTD. CO., an Idaho limited liability company, | Moscow, September 2012 Term<br><br>2013 Opinion No. 48<br><br>Filed: April 16, 2013<br><br>Stephen W. Kenyon, Clerk |
| Plaintiffs-Appellants, | |
| v. | SUBSTITUTE OPINION, THE COURT'S PRIOR OPINION DATED JANUARY 24, 2013 IS HEREBY WITHDRAWN. |
| PATRICK GUNTER and MONICA GUNTER, husband and wife, | |
| Defendants-Respondents, | |
| and | |
| SUMMIT, INC., an Idaho corporation; RON HAZEL, an individual; SARAH HAZEL, spouse of RON HAZEL; DARREN BROTT, an individual; and SUSAN BROTT, spouse of DARREN BROTT, | |
| Defendants. | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Hon. John T. Mitchell, District Judge.

The decision of the district court is <u>vacated</u> and this case is <u>remanded</u> for entry of a judgment consistent with this Opinion. Costs on appeal are awarded to Appellants.

Dean & Kolts, Coeur d'Alene, for Appellants. Charles R. Dean argued.

Ramsden & Lyons, Coeur d'Alene, for Respondents. Marc A. Lyons argued.

_____

W. JONES, Justice

# I. NATURE OF THE CASE

This is an appeal from a district court trial regarding a dispute over two liens on real property: a deed of trust and a mortgage. Appellants ("Insight") are assignees of a mortgage secured by 160 acres of real property owned by Summitt, Inc. ("Summitt"), which includes an 18-acre parcel of land that Summitt purchased from the Respondents ("the Gunters"). The Gunters hold a deed of trust on the Gunter property.

# II. FACTUAL AND PROCEDURAL BACKGROUND

Summitt owned a 142-acre parcel of land that it intended to develop into a residential subdivision. Respondents, Pat and Monica Gunter owned an 18-acre plot of land that adjoined Summitt's 142 acres ("the Gunter property"). Not wanting to live next to a residential development, the Gunters solicited Summitt's president, Ron Hazel, to purchase the Gunter property; the parties agreed to a price of $799,000. On April 21, 2006, the Gunters and Summitt, through its president, Hazel, entered into a purchase and sale agreement for the Gunter property. The agreement, prepared by Summitt, identified EasyWay Escrow ("EasyWay") as the closing agent for the transaction. The agreement provided $1,000 earnest money and the balance of the purchase price was to be paid in "cash at closing." Possession of the land was to be delivered at closing on June 19, 2006.

After executing the purchase and sale agreement, Hazel contacted Independent Mortgage Ltd. Co. ("IM"), seeking a loan of $799,000. IM agreed to loan Summitt $616,000 so long as Summitt's principals executed personal guarantees and secured the mortgage with 160 acres of land including *both* the 142 acres already owned by Summitt and the 18 acres comprising the Gunter property.

Shortly after the execution of the agreement, Hazel contacted Monica Gunter and revealed that Summitt was unable to come up with the full amount of the purchase price. Hazel informed her Summitt could pay $599,000 and asked the Gunters to finance the remaining $200,000 of the purchase price, which the Gunters agreed to do. This conversation was documented by notes taken by Monica Gunter and delivered to EasyWay. These notes do not mention any other loan or financing contemplated by Summitt for the purchase of the Gunter property.

Sandpoint Title was responsible for recording and providing title insurance for both the IM mortgage and the Gunters' deed of trust. Stephanie Brown prepared the documents related to the IM/Summitt mortgage. Carol Sommerfeld, owner of EasyWay Escrow, prepared the documents related to the Gunter/Summitt deed of trust. The district court found that Sommerfeld

2

was not aware of the mortgage executed between IM and Summitt. The district court also found that the Gunters lacked knowledge of the IM/Summitt mortgage at the time of the closing, because they were never informed of any financing by Summitt other than their own deed of trust. Also, there was no reference to the IM mortgage in any part of the closing file. As to the dispute of whether Hazel informed the Gunters or Sommerfeld of the IM/Summitt mortgage, the district court found credible Sommerfeld's and Monica Gunter's testimony that they were not informed of the IM/Summitt mortgage. It also found that IM knew of the Gunters' deed of trust because IM considered seeking a subordination agreement from the Gunters.

Hazel signed the IM/Summitt mortgage on June 19, 2006, at IM's offices in Sandpoint, Idaho. Later that same day Summitt executed a deed of trust in favor of the Gunters at EasyWay's office. All of the documents were delivered to Sandpoint Title by IM and EasyWay for recordation. IM instructed Sandpoint that the IM/Summitt mortgage was to be recorded first. The deed from the Gunters to Summitt was recorded on June 20, 2006, at 4:16 p.m. The IM/Summitt mortgage was recorded that same day at 4:17 p.m., and the Gunter/Summitt deed of trust was recorded at 4:18 p.m.

In 2007, Summitt defaulted on its obligations to both IM and the Gunters. Insight[1] filed a Complaint on August 27, 2008, naming Summitt, Summitt's principals, and the Gunters as defendants. On November 26, 2008, the Gunters answered and denied that their deed of trust was junior to the IM/Summitt mortgage. On February 17, 2009, Insight filed a motion for summary judgment. The district court denied the motion because there was an issue as to who was the initial encumbrancer. Insight filed a motion for reconsideration, which the district court denied. The case was tried to the court on June 28, 2010, and the court issued its final order on August 2, 2010. A final judgment accompanied by a Rule 54(b) certificate was entered on August 6, 2010. An Amended Judgment and Rule 54(b) certificate was entered on August 17, 2010. The Notice of Appeal was filed on September 17, 2010. An Amended Notice of Appeal was filed on October 28, 2010.

After trial, the district court found that the closing of the Gunter/Summitt deed of trust was a separate and independent transaction from the IM/Summitt mortgage. The court found that the separate closings were not part of "one continuous transaction." The district court further found that the Gunters' deed of trust effectively encumbered the Gunter property at the time the transaction between Summitt and the Gunters closed. However, it found the IM mortgage on the

---

[1] The IM/Summitt mortgage was assigned to Insight.

combined 160-acre parcel of land did not create an encumbrance on the Gunter property until after the Gunter/Summitt transaction closed. The rationale was that the mortgage could not encumber property that is not owned by the mortgagor. As a result, the Gunters' deed of trust was determined to be the "first encumbrance" on the Gunter property. The court also found that IM was not a good faith purchaser—even though it recorded first—because it was aware of the financing agreement between Summitt and the Gunters.

On appeal, Insight argues that the IM mortgage has priority as a matter of law because it was a purchase money mortgage that was first recorded thus rendering its "good faith" irrelevant. Insight also contends that the Gunters were not good faith purchasers and had imputed knowledge of IM's mortgage through the escrow agent, EasyWay. Respondents counter that the Gunters' deed of trust was the first encumbrance on the Gunter property; the IM mortgage was not a purchase money mortgage; and even if it was a purchase money mortgage, the Gunters' deed of trust effectively encumbered the land first and therefore had priority.

### III. ISSUES ON APPEAL

1. Whether the district court erred in concluding IM had notice of the Gunters' deed of trust.
2. Whether the district court erred in finding the IM mortgage was not a purchase money mortgage.
3. Whether the district court erred in finding the Gunters' deed of trust had priority.

### IV. STANDARD OF REVIEW

This Court exercises free review over conclusions of law, *Smith v. J.B. Parson Co.*, 127 Idaho 937, 941, 908 P.2d 1244, 1248 (1996), but will not set aside a finding of fact unless it is clearly erroneous. Idaho R. Civ. P. 52(a). When a case is tried to a court, determinations as to the credibility of witnesses, the weight of their testimony, their probative effect, and inferences drawn from that testimony are the province of the district court. *Estate of Skvorak v. Security Union Title Ins. Co.*, 140 Idaho 16, 19–20, 89 P.3d 856, 859–60 (2004); *Idaho Power Co. v. Congeneration, Inc.*, 134 Idaho 738, 746, 9 P.3d 1204, 1212 (2000).

On review, the interpretation of a statute is an issue of law over which this Court exercises free review. *Idaho Fair Share v. Idaho Public Utilities Comm'n*, 113 Idaho 959, 961–62, 651 P.2d 107, 109–110 (1988), *overruled on other grounds by J.R. Simplot Co. v. Idaho State Tax Comm'n*, 120 Idaho 849, 820 P.2d 1206 (1991). The primary function of the Supreme Court when interpreting a statute is to give effect to the legislative intent, which should be derived, where applicable, from the clearly expressed intent of the legislature. *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley Cnty.*, 132 Idaho 551, 557, 976 P.2d 477, 483 (1999);

4

*George W. Watkins Family v. Messenger*, 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990).

## V. ANALYSIS

Idaho is a race-notice recording state: "Every conveyance of real property . . . is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded." I.C. § 55-812. A purchase money mortgage "has priority over all other liens created against the purchaser, subject to the operation of the recording laws." I.C. § 45-112.

**A.      The district court's finding that IM had notice of the Gunters' Deed of Trust is Clearly Erroneous.**

The district court found that IM had actual notice of the Gunters' deed of trust, because IM considered a subordination agreement and instructed Sandpoint Title to record the IM mortgage first. This finding is clearly erroneous.

The district court found that Summit executed the IM mortgage on June 19, 2006. The district court further found that Summit executed the Gunters' deed of trust also on June 19, 2006, but later in the day. It is not technically possible for IM to have notice of an encumbrance on property before that encumbrance actually comes into existence. Though IM knew that Summitt was intending to execute a deed of trust, that was notice of an intent to subsequently encumber property, not notice of an actual encumbrance on property. Therefore, the district court's finding that IM had notice of the Gunters' deed of trust is clearly erroneous.

**B.      The IM/Summitt Mortgage Was a Purchase Money Mortgage.**

A purchase money mortgage is defined by statute as "a mortgage given for the price of real property, at the time of its conveyance." I.C. § 45-112. A purchase money mortgage is given where the loan enables the purchaser to purchase the land securing the mortgage. It is executed to secure the purchase money necessary to purchase the land. *See Pulse v. North American Land Title Co.*, 707 P.2d 1105, 1107–08 (Mont. 1985); *Liberty Parts Warehouse, Inc. v. Marshall County Bank & Trust*, 459 N.E.2d 738, 739 (Ind. Ct. App. 1984); *see also* 55 Am. Jur. 2d *Mortgages* §13, at 202 (1971). The purchase money mortgage must be executed in the same transaction as the conveyance or acquisition of title. A deed of trust can be a purchase money mortgage. *Id.* Idaho courts have not required that purchase money mortgages secure the purchase money for the *entire* price of securing the property. *See Skvorak*, 140 Idaho at 18, 21, 89 P.3d at 858, 861 (securing purchase money with more than one purchase money mortgage).

5

In *Skvorak*, the Sylvesters agreed to purchase a large parcel of property from the Skvoraks called Gold Cup. *Id.* at 18, 89 P.3d at 858. The Sylvesters obtained a mortgage from Crown Pacific for the down payment of Gold Cup and executed a mortgage in favor of the Skvoraks for the remaining purchase price. *Id.* These two mortgages were executed on the same day, at different times, but outside of the presence of all the parties. *Id.* Crown Pacific recorded its mortgage twelve days before the Skvoraks executed their mortgage. *Id.* After the Sylvesters filed for bankruptcy, a dispute arose between the Skvoraks and Crown Pacific as to whose mortgage had priority. This Court found that both parties held purchase money mortgages on Gold Cup, and did not disturb the district court's finding that both parties had knowledge of the other's mortgage. *Id.* at 21–22, 89 P.3d at 861–62. It was argued that the Supreme Court adopt the Restatement approach, which provides that a vendor purchase money mortgage prevails against a third party purchase money mortgage that are executed as part of one continuous transaction. *Id.* This Court rejected said approach, and found that Idaho's recording statutes resolved this dispute. *Id.* As both parties had notice of the other's encumbrance, priority was resolved by the first party to record, and that party's good faith was irrelevant. *Id.*

In the present case, three sub-issues must be addressed in determining whether the IM mortgage was a purchase money mortgage. These sub-issues will be discussed in turn: (1) whether the IM mortgage was given to enable Summitt to purchase the Gunter property; (2) whether the IM mortgage and the Gunters' deed of trust was part of one continuous transaction involving the sale of the Gunter property; and (3) whether the taking of additional security destroys the purchase money status of a mortgage.

1.     *The IM Mortgage Was Given to Enable Summitt to Purchase the Gunter Property.*

In the current matter, it is clear that the IM/Summitt mortgage was given as security for the purchase of the Gunter property. The record indicates that Summitt sought to purchase the Gunter property for $799,000. It also indicates that Summitt did not have the funds necessary to close the transaction, so it approached IM about obtaining a loan for the entire purchase price. IM ultimately provided $616,000 of the purchase money necessary to complete the acquisition of the Gunter property. Like *Skvorak*, Summitt relied on more than one source to obtain the money necessary to complete the transaction. *See Skvorak*, 140 Idaho at 16, 89 P.3d at 856. The primary inquiry is whether the IM/Summitt mortgage was executed so as to enable Summitt to purchase the Gunter property. It is evident that the IM mortgage was so executed, because the money was

given to the escrow agent handling the sale of the Gunter property, EasyWay. It was also only given after IM examined the property Summitt sought to purchase.

Therefore, the IM mortgage was given as security for the purchase price of the Gunter property.

2. *The IM Mortgage and the Gunters' Deed of Trust Were Part of One Continuous Transaction.*

Idaho Code § 45-112 requires that a purchase money mortgage be given "at the time of [the land's] conveyance." This statutory language reflects the commonly recognized requirement that a purchase money mortgage be granted as a part of "one continuous transaction involving the purchase" of land. *See Skvorak*, 140 Idaho at 22, 89 P.3d at 862; *see also*, *Van Patten v. Van Patten*, 784 P.2d 218, 220 (Wyo. 1989). The execution of the mortgage and the transfer of the deed need not be strictly contemporaneous. *See, e.g.*, *Skvorak*, 140 Idaho at 22, 89 P.3d at 862. When a deed and mortgage are executed as part of the same transaction, the mortgage is not granted to the mortgagee after the mortgagor has obtained title; rather, the mortgagor takes title already encumbered by the mortgage. *Liberty Parts Warehouse*, 459 N.E.2d at 739.

Insight argues that the IM mortgage was part of one continuous transaction because security instruments were signed on the same day within hours of each other, the mortgage funds were sent to EasyWay, and all the documents were recorded together by Sandpoint Title. In other words, the mortgage was merely one step of several necessary to accomplish a single transaction. Respondents, however rely on the district court's finding that the IM mortgage closed separately from the Gunters' deed of trust, because the "IM mortgage could not encumber property before it is owned by the buyer." Thus, they argue the Gunter/Summitt deed of trust must have occurred before the IM mortgage.

The district court concluded that the IM mortgage was not a purchase money mortgage because it was not part of one continuous transaction. The district court reasoned that the mortgage and deed of trust closed at different times and at different locations. The district court noted that Carol Sommerfeld closed the Gunter/Summitt transaction at the office of EasyWay, while Stephanie Brown prepared all the documents related to the IM/Summitt transaction at the IM offices. This evidence, to the district court, did "not reflect coordination of a single closing effort" on the part of the parties. The district court noted that the Gunters did not have knowledge of the IM mortgage and were not informed of the mortgage. This conclusion was clearly erroneous.

The primary inquiry is whether the mortgage was intended as part of a single transaction. *Skvorak* demonstrates that mortgages need not be executed in unison to be part of the same transaction. In *Skvorak*, the two mortgages were executed at different times on the same day and were not executed in the presence of all of the parties. 140 Idaho at 18, 89 P.3d at 858. In the current matter, Hazel executed the IM/Summitt mortgage on June 19 and the Gunter/Summitt deed of trust later that day. Also, the mere fact that the IM mortgage was signed at IM's offices and not in the presence of the Gunters is not fatal to the purchase money mortgage status of the IM mortgage, because in *Skvorak*, both parties had purchase money mortgages even though one of them was not signed in the presence of both the parties. *Id.* Likewise, the present case involves one transaction with two mortgages enabling Summitt to purchase the Gunter property. A land-sale transaction concludes upon the delivery of the deed. *Barmore v. Perrone*, 145 Idaho 340, 344, 179 P.3d 303, 307 (2008). Here, before the deed was delivered to Summitt, the proceeds and documents were delivered in escrow to the title company. Therefore, there was only one transaction.

The district court also found that the IM mortgage was not a purchase money mortgage because it was only able to encumber the Gunter property at the time Summitt gained an ownership interest in the Gunter property. But the district court's reasoning neglects the very nature of a purchase money mortgage, and presupposes that the mortgage was not a purchase money mortgage in order to find that IM did not encumber the property when executed. Under this standard, no purchase money mortgage could effectively encumber property before title passes to the mortgagor, because the purchase money *enables* the mortgagor to acquire title to the property. Insight rightly notes that applying the district court's reasoning—that "[the IM] mortgage could not encumber the Gunter property, because Summitt did not own the Gunter property when the mortgage was signed,"—would preclude any purchase money mortgage from being a purchase money mortgage. In a purchase money mortgage, title does *not* first pass to the mortgagor, which is then encumbered; rather, title passes to the mortgagor *already* encumbered. *Liberty Parts Warehouse*, 459 N.E.2d at 739. Nothing in Idaho's jurisprudence precludes more than one purchase money mortgage from being executed on land. *See Skvorak*, 140 Idaho at 16, 89 P.3d at 856. Therefore, since the IM mortgage provided the funds necessary to enable Summitt to purchase the Gunter property, and since the money was not paid directly to Summitt but to EasyWay, the Gunter property passed to Summitt already encumbered by the Gunters' deed of trust *and* the IM mortgage.

8

In sum, the district court's finding that the IM mortgage and Gunters' deed of trust were not part of one continuous transaction is clearly erroneous. The mortgage granted by IM was a purchase money mortgage because it was executed to enable Summitt to purchase the property in question, in the same transaction as the acquisition of title. The question next becomes whether the taking of additional security by IM on the mortgage destroyed the purchase money status of the IM mortgage.

3.    *The Taking of Additional Security Does Not Destroy the Purchase Money Status of a Mortgage, But Serves As Guarantor of the Mortgage.*

Whether the taking of additional security on a mortgage, beyond the land being purchased, destroys the purchase money status of a mortgage, is a question of first impression. As early as the 1800s, courts have recognized purchase money mortgages, even though additional security was taken on a note. This additional security was often in the form of an assignment or a deed of trust. *See, e.g.*, *Farmers' & Mech. Sav. Co. v. McCabe*, 73 Mo. App. 551, 553 (1898); *Bliss v. Crosier*, 34 N.E. 1075 (Mass. 1893). One particular New York case from 1912 involved land given as additional security. *See Hubbard v. Lydecker*, 137 N.Y. Sup. Ct. 714, 716 (N.Y.S. 1912). In *Hubbard*, a purchase money mortgage was given to purchase a lot on Prospect Street. The purchase money mortgage also included a lien on a lot on Greenridge Avenue as additional security. *Id.* The court held that the mortgage was primarily a lien on the Prospect Street lot and that the Greenridge Avenue lot merely stood in the position of a guarantor. *Id.*

The loan given by IM was given with the intent to enable Summitt to purchase the Gunter property. But after examining the property, Insight wanted additional security. Insight agreed to take a second mortgage on the adjoining 142 acres of Summitt property to guarantee the loan. The IM mortgage was primarily a purchase money mortgage designed to enable Summitt to purchase the property.

In sum, the IM mortgage was a purchase money mortgage that was not destroyed by the taking of additional security by IM.

**C.    The District Court Erred in Concluding the Gunter Deed of Trust Took Priority.**

Since both the IM/Summitt mortgage and the Gunter/Summitt deed of trust are purchase money mortgages, the next issue is which security interest has priority.

Insight, argues that the IM mortgage has priority as a matter of law. Insight reads *Skvorak* as holding that as between two purchase money mortgages, the first to record has priority. Insight contends that the first party to record is the initial encumbrancer, and that the initial

encumbrancer's knowledge is irrelevant. Second, Insight argues that the Gunters, even if they lacked actual knowledge, had constructive notice of IM's mortgage because it was recorded first, and constructive notice under I.C. § 55-811 is imparted at the time it is deposited with the recorder. Also, Insight contends that the Gunters had imputed inquiry notice of the IM mortgage, because EasyWay should have known from its past transactions with Summitt that Summitt was securing the purchase money with a mortgage from IM.

The Gunters contend that even if the IM mortgage is a purchase money mortgage, *Skvorak* does not support Insight's argument. The Gunters read *Skvorak* as only applicable when both mortgages were part of one continuous transaction, and where both parties knew of the other's mortgage. The Gunters contend they are the initial encumbrancer based on the district court's finding that the IM mortgage and the Gunters' deed of trust were not part of one continuous transaction. In the alternative, the Gunters urge this Court to reconsider its earlier rejection of § 7.2 of the Restatement.

The parties dispute who is the initial encumbrancer under *Skvorak*. Insight contends IM was the initial encrumbrancer on the Gunter property, because the IM mortgage and the Gunters' deed of trust were not separate transactions, but one continuous transaction. IM was, therefore, the initial encumbrancer because it was the first to record. The Gunters argue the first encumbrancer is the first lien to be executed in one continuous transaction. Therefore, they argue IM was not the first encumbrancer, because it had knowledge of the Gunters' deed of trust, and its mortgage was a separate transaction. The district court concluded that because the IM mortgage was a separate transaction, it was not valid upon its execution but only after the Gunters' deed of trust closed and transferred title of the Gunter property. Consequently, the district court held that the Gunters' deed of trust was necessarily the first to encumber the property, and since IM had knowledge of the Gunters' deed of trust, its mortgage was subsequent to the Gunters' deed of trust.

In *Skvorak*, "initial encumbrancer" is merely the characterization of the party against whom subsequent purchasers are tested under the recording statutes. The court noted that the good faith of the initial encumbrancer is irrelevant. It should be clarified that the good faith of the initial encumbrancer is irrelevant as to subsequent encumbrancers, because the initial encumbrancer cannot technically have notice of an encumbrance before it comes into existence. But the issue presented in *Skvorak* was "the priority between a vendor purchase money mortgage and a third party purchase money mortgage, where the ***vendor has notice*** *of the third party's mortgage* and it was recorded first." 140 Idaho at 22, 89 P.3d at 862 (emphasis added). In

10

*Skvorak*, "each party knew or had constructive notice of the other party's mortgage." *Id.* at 21, 89 P.3d at 861. Quite simply, in a dispute involving priority between two mortgages in a single transaction, where *both* parties are good faith encumbrancers of property for value, the first to record has priority against all other subsequent mortgages. *Id.* at 23, 89 P.3d at 863.

A purchase money mortgage is given priority against other liens *subject to* the recording laws. I.C. § 45-112. Idaho's race-notice statute provides that "[e]very conveyance of real property is . . . void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for valuable consideration, whose conveyance is first duly recorded." I.C. § 55-812. Our race-notice statute only voids a prior conveyance if (1) the subsequent conveyance was made in good faith and for valuable consideration; and (2) the subsequent conveyance is the first duly recorded. Idaho law defines "conveyance" as "the instrument in writing by which any estate or interest in real property is created, alienated, mortgaged or encumbered." I.C. § 55-813. A conveyance does not depend upon when it is recorded.

Here, the Summitt/IM mortgage was executed on June 19, 2006, before the Summitt/Gunter deed of trust was executed. Therefore, the IM mortgage was the prior conveyance and the Gunters' deed of trust was the subsequent conveyance. Since the Gunters' deed of trust was the subsequent encumbrance, the only way it could take priority over the IM mortgage as the first encumbrance—where IM by default is a good faith encumbrancer against subsequent encumbrancers—is if the Gunters were the first to record. The Gunters were not the first to record. Therefore, their deed of trust is junior to the IM mortgage.

## VI. CONCLUSION

This Court holds that IM was a good faith encumbrancer of the Gunter property; both the Gunters and IM held purchase money liens on the Gunter property; and the IM mortgage takes priority over the Gunters' deed of trust. The judgment of the district court is, therefore, vacated and remanded for entry of a judgment consistent with this Opinion. Costs on appeal are awarded to Insight as the prevailing party. Neither party requested attorney fees on appeal.

Chief Justice BRUDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.


**On Denial of Petition for Rehearing — April 10, 2013**

W. JONES, Justice

Respondents, Pat and Monica Gunter ("Gunters"), petition this Court for rehearing in this matter.

11

The Gunters contend that Idaho law indicates a preference for the liens of vendors against other liens. The Gunters contend that Idaho should follow the law of other states which grant priority to vendor purchase money mortgages. *See Sutton Funding, LLC v. Mueller*, 278 S.W.3d 702, 704–05 (Mo. Ct. App. 2009); *ALH Holding Co. v. Bank of Telluride*, 18 P.3d 742 (Colo. 2000); *Giragosian v. Clement*, 199 A.D.2d 656 (N.Y. 1993).

The Gunters thus contend for the first time that they had a vendor's lien on the property, which should take priority. This is a distinct theory from the purchase money mortgage theory on which this case was originally brought. This Court will not consider issues raised for the first time on appeal. *Clear Springs Food, Inc. v. Spackman*, 150 Idaho 790, 812, 252 P.3d 71, 93 (2011). Much less will this Court consider arguments raised for the first time on petition for rehearing after a decision has been rendered. The Gunters' petition for rehearing is therefore denied.